**THE DANN LAW FIRM, PC**
Javier L. Merino
372 Kinderkamack Rd., Ste. 5
Westwood, NJ 07675
Telephone: 216-373-0539
Facsimile: 216-373-5036
notices@dannlaw.com
*Attorney for Plaintiff Viviana Villegas*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION**

| | |
|---|---|
| **VIVIANA VILLEGAS,**<br><br>Plaintiff,<br><br>vs.<br><br>**PHH MORTGAGE CORPORATION,**<br><br>Defendant. | Case No.:<br><br><br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Viviana Villegas ("Plaintiff" or "Villegas"), through counsel, for her Complaint against Defendant PHH Mortgage Corporation ("Defendant" or "PHH"), states:

**WHY VILLEGAS BRINGS THIS CASE**

1. Villegas encountered financial difficulties due to a loss of income. Villegas submitted a loss mitigation application to PHH in an attempt to save her home. In response to Villegas's application, PHH approved Villegas for a permanent mortgage loan modification. Villegas executed the modification agreement but an issue arose regarding Villegas's name on the modification documents as it was different from prior documents. Both PHH and Villegas's counsel agreed that Villegas needed to present an Affidavit of Identity to verify that her name in previous loan documents and her name on the Permanent Modification reference the same person. Villegas, through her counsel, sent the executed Affidavit of Identity to PHH via fax to the correct

1

fax number, but PHH did not acknowledge receipt, did not notify Villegas that it did not receive the Identity Agreement, unreasonably sent an untimely notice of loan modification denial, and rejected the loan modification. In response, Villegas, through Counsel, sent a Notice of Error (the "NOE") to PHH on or around June 2, 2021 for its failure to honor the loan modification. PHH sent a response to the NOE on July 12, 2021 and claimed that a new Final Modification Agreement was July 8, 2021 with a return date of July 26, 2021. However, Villegas never received the new Final Modification Agreement from PHH.

## INTRODUCTION, PARTIES, JURISDICTION, AND VENUE

2. Villegas is the owner of residential real property, located at and commonly known as 765 Stephen Avenue, Perth Amboy, NJ 08861 (the "Home") which she currently occupies and has occupied as her primary, principal residence at all this relevant to the Complaint.

3. PHH is the servicer of a note executed by Villegas (the "Note") and of a mortgage on the Home that secures said note (the "Mortgage") (collectively, the "Loan"). A copy of the Loan is attached as **Exhibit 1**.

4. This Court has jurisdiction over the claims against PHH is conferred by 28 U.S.C. § 1331 as this action under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA") and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA").

5. This Court has supplemental jurisdiction to hear any and all state law claims pleaded herein against PHH or that may subsequently arise pursuant to 28 U.S.C. § 1367.

6. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Villegas maintains the Home within this District.

## SUMMARY OF CLAIMS

7. This action is brought primarily to enforce regulations promulgated by the Consumer Financial Protection Bureau ("CFPB") that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.41 of Regulation X.

8. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

9. Specifically, on January 17, 2013, the CFPB issued RESPA (Regulation X) Mortgage Servicing Final Rules, 78 F.R. 10695 (February 14, 2013), which became effective on January 10, 2014.

10. Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

11. Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

12. The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

13. PHH is subject to the aforesaid regulations and neither qualifies for the exemption for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4). *See* 12 C.F.R. § 1024.30(b)(1).

14. PHH is not a "qualified lender", as defined in 12 C.F.R. § 617.700. *See* 12 C.F.R. § 1024.30(b)(3).

15. Villegas asserts a claim for relief against PHH for breaches of the specific rules under Regulation X and otherwise under RESPA as set forth, *infra*.

16. Villegas has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

17. Additionally, Villegas asserts statutory claims for violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 ("CFA") against PHH.

18. Villegas additionally asserts common law claims against PHH for breach of contract and a violation of the covenant of good faith and fair dealing.

## STATEMENT OF FACTS

19. In 2019, Villegas encountered financial difficulties and fell behind on her payments on the Loan.

20. On October 21, 2019, PHH commenced a foreclosure action against Villegas in the Superior Court of New Jersey, Middlesex County, General Equity, in the matter stylized *PHH Mortgage Corporation v. Viviana Villegas,* et al., assigned docket number F-017117-19. A copy of the foreclosure docket is attached as **Exhibit 2**.

21. On February 21, 2020, PHH obtained a Final Judgment of foreclosure against Villegas. *See* Exhibit 1.

22. In order to avoid losing her home to foreclosure sale, on or before July 2020, Villegas submitted a loss mitigation application to PHH.

23. On or about July 17, 2020, PHH approved Villegas for a trial plan (the "Trial Plan") under the Home Affordable Modification Program ("HAMP") A copy of the executed Trial Plan is attached as **Exhibit 3.**

24. Villegas, through her counsel, executed and returned the Trial Plan on or about August 5, 2020. **See** **Exhibit 3**.

25. Villegas, through her counsel, timely remitted all necessary payments under the Trial Plan, and after making all three (3) payments due thereunder, continued to remit monthly payments in furtherance of the Trial Plan. A copy of the three (3) monthly payments dated September 2020, October 2020, and November 2020 is attached as **Exhibit 4.**

26. Subsequent to Villegas's acceptance of and full performance of her obligations under the TPP, PHH generated correspondence to Villegas dated November 18, 2020 approving her for a Permanent Modification Offer (the "Permanent Modification"). A copy of the fully executed Permanent Modification, with cover letter and tracking number, is attached as **Composite Exhibit 5.**

27. Villegas, through her counsel, timely executed and returned the Permanent Modification to PHH on or about November 30, 2020. **See** **Composite Exhibit 5.**

28. On or about December 7, 2020, PHH sent a letter to Villegas stating that the Permanent Modification was incomplete due to "defects" in the agreement and advised that the new agreement or missing document must be submitted before or on December 25, 2020. A copy of the PHH letter dated December 7, 2020 is attached as **Exhibit 6.**

29. Specifically, PHH indicated the "defects" were as follows:

The agreement we received is missing one or more signatures or a signature is illegible.

The modification agreement must be executed in the presence of a Notary Public and the Notary information is incomplete on the signature page(s).

The agreement must be executed in the presence of a Notary Public and the Notary information is missing or is incomplete.

**See** **Exhibit 6**.

30. As the Permanent Modification was legibly executed and properly notarized, Villegas, through counsel, attempted to contact a PHH representative to clarify the December 7,

2020 correspondence. However, PHH failed to provide Villegas with a clear explanation until January 2021.

31. On or around January 2021, Villegas, through counsel, reached out to PHH and spoke with PHH's Relationship Manager, B. Guring.

32. For the very first time, PHH clarified the December 7, 2020 letter and stated that the reason for the "defect" letter was that PHH's Title Company advised PHH that Villegas's name has appeared as Vivian (instead of Viviana) in prior loan documents, and due to this discrepancy, PHH needed to clarify the difference in names.

33. During this phone call, PHH, through Mr. Guring, and Villegas, through her counsel, agreed that Villegas should sign and send an Affidavit of Identity to verify that Villegas's name in previous loan documents (Vivian) and Villegas's name on the Permanent Modification (Viviana) reference the same person.

34. On or around January 22, 2021, Villegas, through her counsel, submitted an executed Affidavit of Identity to PHH via fax transmission. A copy of the fax transmission and executed affidavit is attached as **Exhibit 7.**

35. Villegas, through her counsel, timely remitted three (3) more payments in furtherance of and in satisfaction of her obligations under the permanent modification. A copy of the three (3) monthly payments dated January 2021, February 2021, and March 2021 is attached as **Exhibit 8.**

36. On or around March 18, 2021, Villegas's counsel contacted PHH to follow up on the Permanent Modification and spoke with PHH representative Anaday (ID # BDW). During this call, Anaday advised Villegas's counsel that the loan modification was denied because the agreement was not returned in a timely fashion, despite Villegas having previously submitted the

agreement in December 2020 and despite Villegas having submitted the Affidavit of Identity, as instructed by PHH, in January 2021. During this call, Anaday advised that the next available appointment for Villegas's counsel to speak with Villegas's Single Point of Contact was March 24, 2021. A copy of the email correspondence dated March 18, 2021 memorializing this call is attached as **Exhibit 9.**

37. On or around March 24, 2021, Villegas's counsel, for the first time, received a PHH loan modification denial letter dated February 26, 2021. A copy of the PHH letter dated February 26, 2021 is attached as **Exhibit 10.**

38. The denial letter stated "you failed to return the corrected final modification agreement within the required timeframe."

39. On or around March 30, 2021, Villegas through Counsel, contacted the Relationship Manager to seek clarification of PHH's denial of the loan modification. The Relationship Manager stated that the loan modification was denied because PHH did not receive the Identity Affidavit to correct the name issue on the Permanent Modification. A copy of the email correspondence dated March 30, 2021 is attached as **Exhibit 11.**

40. Over the course of the following weeks, PHH's representatives provided inconsistent information as to why the modification was denied. For example, PHH advised "the modification has been denied due to incorrect name, signature and notary." Then PHH advised "the modification has been denied as we failed to receive the corrected final modification agreement within the required timeframe." Then, PHH admitted that a corrected Final Modification Agreement was never sent. Last, PHH now claimed "the modification was denied as we did not receive the Identity Affidavit to correct the name issue on the agreement." This is unequivocally false as Villegas previously submitted the Identity Affidavit.

41.     As the Identity Affidavit was sent to PHH using the correct fax number, Villegas bears no fault for their failure to properly handle it after its receipt. Moreover, PHH did not previously notify Villegas that it did not receive the Identity Agreement, unreasonably sent an untimely notice of loan modification denial, and rejected the Modification.

42.     On or around June 2, 2021, Villegas, through Counsel, sent correspondence to PHH at the address PHH voluntarily designated for the receipt of notices of error sent pursuant to 12 C.F.R. § 1024.35 (the "Designated Address") via USPS Certified Mail, return receipt requested [Tracking No.: 7017 3380 0000 2744 6396] captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) and 12 U.S.C. § 2605(k)(1)(C) for failure to honor a loan modification" (the "NOE"). A copy of the NOE and tracking information evidencing delivery of the NOE from the website for the USPS (www.usps.com) is attached as **Composite Exhibit 12.**

43.     According to USPS Tracking, PHH received the NOE on June 7, 2021. *See Exhibit 12.*

44.     On or around July 12, 2021, PHH sent correspondence to Villegas in response to the NOE (the "NOE Response"). Through the NOE Response, PHH indicated, in relevant part:

> The account was under review for the Modification Program. The Modification Agreement was sent to the accountholder on December 7, 2020, for review and acceptance. However, we did not receive the corrected final Modification Agreement within the required timeframe. Therefore, the modification review request was denied and the denial letter was sent to the accountholder on February 26, 2021.
>
> We verified that our representative advised you to send the Name Change Affidavit on January 14, 2021. However, our representative failed to notify you that we would also require a corrected final Modification Agreement signed by the accountholder to process this request. We apologize for the inconvenience caused.
>
> We are re-reviewing the account for a modification and sent the Modification Agreement to the accountholder on July 8, 2021, for review and acceptance. To proceed further with the modification review process, we request the accountholder to return the completed and signed Modification Agreement by July 26, 2021, along with the payment of $9,344.85 by end of this month.

A copy of the NOE Response, sans enclosures, is attached as **Exhibit 13**.

45. As of this date, neither Villegas nor her counsel have received the promised Permanent Modification from PHH. Yet, PHH continues prosecuting the foreclosure against Villegas.

## IMPACT AND DAMAGE TO VILLEGAS

46. PHH's actions in failing to conduct a reasonable investigation and fix the blatant errors stated in the NOE has caused Villegas to incur attorneys' fees and costs to attempt to correct the continuing errors.

47. PHH has failed to properly service the Loan which has further directly and proximately caused the following damages to Villegas:

   A. PHH has failed to implement and honor the Modification, preventing Villegas from saving her Home by obtaining the payment relief that the Modification would have provided to her;

   B. Villegas remitted and lost the use of $11,204.10 in funds remitted as modification payments, relying on the express promise of a permanent modification without receiving the benefit of the same;

   C. The lost opportunity of the Permanent Modification;

   D. Ongoing incurral of attorneys' fees to defend against further actions in furtherance of the foreclosure against Villegas which would have become moot and been dismissed had PHH honored the Permanent Modification;

   E. Exacerbation to the harm to Villegas's credit standing due to the default on the Loan which has needlessly continued due to PHH's failure to honor the Permanent Modification and a delay in Villegas's rehabilitation of the same; and,

F.  Great emotional distress driven by the continued fear of losing her Home in foreclosure, which has resulted in anxiety and other mental distress.

48. Throughout this entire ordeal, Villegas has simply wanted the benefit of a loan modification to resume making timely, proper payments on the Loan, begin rehabilitating her credit standing, and save her Home from foreclosure sale so that she can continue to reside there.

**ADDITIONAL EVIDENCE OF PHH's PATTERN AND PRACTICE OF VIOLATIONS OF REGULATION X**

49. PHH's actions are part of a pattern and practice of behavior in violation of Plaintiff's rights and in abdication and contravention of PHH's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

50. At the time of the filing of this Complaint, PHH has had Seven Hundred Eleven (711) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" concerning mortgages. PHH has also had Five Hundred Forty-Six (546) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" concerning mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database (http://www.consumerfinance.gov/complaint database).

**COUNT ONE**

**VIOLATION OF 12 C.F.R § 1024.35(e) AND 12 U.S.C. §§ 2065(k)(1)(C) AND (E) FOR FAILURE TO SUFFICIENTLY RESPOND TO THE NOE**

51.  Villegas restates and incorporates all of her statements and allegations contained in paragraphs 1 through 50, in their entirety, as if fully rewritten herein.

52. A servicer shall not "fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

53. A servicer shall not "fail to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."" 12 U.S.C. § 2065(k)(1)(E).

54. 12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

55. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

56. Pursuant to 12 C.F.R. § 1024.35(b)(11), the term "error" refers to any error, not otherwise specified in 12 C.F.R. §§ 1024.35(b)(1) to 1024.35(b)(10), committed in regards to the borrower's mortgage loan.

57. 12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either:

> A. Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> B. Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error

occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

58. NOE #1 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). *See Exhibit 12*.

59. Villegas sent the NOE to PHH at the Designated Address and PHH received the NOE at the Designated Address on June 7, 2021. *See Exhibit 12*.

60. Through the NOE, Villegas alleged that PHH committed an error in relation to the Loan for failing to honor the Loan Modification which constitutes an error relating to the servicing of the Loan under 12 C.F.R. §1024.35(b)(11) and otherwise an error relating to avoiding foreclosure or other standard servicer's duties per 12 U.S.C. § 2605(k)(1)(C).

61. PHH was required to provide written correspondence to Villegas in response to the NOE "no later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error." That is, PHH was required to respond to the NOE on or before July 20, 2021. See 12 C.F.R. § 1024.36(d)(2)(i)(B).

62. PHH, through the NOE Response, stated: "The account was under review for the Modification Program. The Modification Agreement was sent to the accountholder (sic) on December 7, 2020, for review and acceptance. However, we did not receive the corrected final Modification Agreement within the required timeframe. Therefore, the modification review was denied and the denial letter was sent to the accountholder on February 26, 2021." *See Exhibit 13*.

63. Moreover, PHH, through the NOE Response, stated that "We are re-reviewing the account for a modification and sent the Modification Agreement to the accountholder on July 8, 2021, for review and acceptance. To process further with the modification review process, we request the accountholder to return the completed and signed Modification Agreement by July 26, 2021…" *See Exhibit 13*.

64. PHH did not send, and Villegas never received, the new Modification Agreement with the return date of July 26, 2021 as claimed in itsNOE Response, and PHH therefore failed to comply with the requirements of 12 C.F.R. § 1024.35(e)(1) as they did not mitigate the harm to Villegas, let alone correct the error.

65. The NOE Response otherwise failed to comply with 12 C.F.R. § 1024.35(e)(1)(i)(A) as PHH did not admit that the alleged errors occurred. *See Exhibit 13*.

66. The NOE Response otherwise failed to comply with 12 C.F.R. § 1024.35(e)(1)(i)(B) as PHH failed to conduct a reasonable investigation into the alleged errors prior to claiming that no error occurred as any reasonable investigation would have confirmed that Villegas sent the Identity Affidavit and that PHH wrongfully failed to honor the Permanent Modification. *See Exhibit 13*.

67. As a result of PHH's actions, Villegas suffered damages, further described *supra*, in ¶¶46-47 and specifically incurred fees in having counsel prepare and send the NOE on her behalf to PHH at the Designated Address, which would not have been required but for PHH's failure to properly respond to the NOE.

68. PHH's actions, in failing to properly respond to the NOE constitutes a violation of 12 C.F.R. § 1024.35(e), and is otherwise a violation of 12 U.S.C. §§ 2065(k)(1)(C) and (E).

69. As a result of PHH's actions, PHH is liable to Villegas for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

70. Villegas further requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT TWO

## BREACH OF CONTRACT

71. Villegas restates and incorporates all of her statements and allegations contained in paragraphs 1 through 50, in their entirety, as if fully rewritten herein.

72. The Permanent Modification is an enforceable contract between Villegas and PHH. **See Exhibit 3; see also Composite Exhibit 5.**

73. Villegas accepted the Modification by executing and returning the Trial Plan Period to PHH, making the necessary Trial Plan payments, executing and returning the Permanent Modification to PHH, and submitting an executed Affidavit of Identity to PHH via Fax.

74. PHH breached the contract by failing to honor the express terms of the Permanent Modification in failing to implement the Modification.

75. PHH breached the Permanent Modification by failing to acknowledge receipt of the Identity Affidavit and then rejecting and refusing to honor the Permanent Modification due to circumstances created solely by PHH.

76. Moreover, PHH breached the Permanent Modification by listing three (3) reasons for the supposed "defect" which ultimately ended up to be false statements as neither of the reasons ultimately ended up to be the actual issue which prevented PHH from implementing the modification.

77. PHH owed Villegas a fiduciary duty to handle the Permanent Modification properly and in accordance with its terms. PHH breached its duty by failing to implement the Modification.

78. Further, PHH's intentional and knowing conduct has caused Villegas to suffer extreme emotional distress driven by the fear that she will lose the Home at a foreclosure sale, which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress, which was a foreseeable result of its breach of the Modification.

79. As a result of PHH's actions, PHH is liable to Villegas for actual damages as further alleged, *supra*, in ¶¶ 46-48.

## COUNT THREE

### VIOLATION OF THE DUTY OF GOOD FAITH AND FAIR DEALING

80. Villegas restates and incorporates all of her statements and allegations contained in paragraphs 1 through 50, in their entirety, as if fully rewritten herein.

81. PHH is in privity of contract with Villegas, through the Loan, Trial Period Plan, and Permanent Modification, and as such is obligated by contract and common law to act in good faith and to deal fairly with Villegas.

82. The purpose of the duty of good faith and fair dealing is to guarantee that the parties remain committed to the intended and agreed upon expectations of the parties in their performance.

83. PHH has breached this duty by failing to implement the Permanent Modification.

84. PHH has further breached this duty by failing to correct its errors despite Villegas' attempts to notify PHH as to the same.

85. PHH has acted in bad faith, dishonestly, and with an improper motive to injure the rights of Villegas.

86. Villegas has suffered, and continues to suffer, significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress.

87. As a result of PHH's actions, PHH is liable to Villegas for actual damages as further alleged, *supra,* in ¶¶ 46-48.

## COUNT FOUR

### VIOLATION OF N.J.S.A. § 56:8-2, THE CONSUMER FRAUD ACT

88. Villegas restates and incorporates all of her statements and allegations contained in paragraphs 1 through 50, in their entirety, as if fully rewritten herein.

89. The CFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate...

N.J.S.A. § 56:8-2.

90. In the operation of its business, PHH has engaged in the use of unlawful practices, as further described, *supra*.

91. Each unconscionable practice, deception, false promise, misrepresentation and/or knowing omission of material fact by PHH described, *supra*, constitutes a separate violation under the CFA.

92. PHH is a "person" as defined by N.J.S.A. § 56:8-1(d) as PHH is a partnership, corporation, company, trust, business entity, or business association.

93. Through the Trial Plan Period, PHH promised it would issue Villegas a permanent modification in exchange for Villegas' payments under the Trial Plan. **See Exhibit 3**.

94. Villegas, relying upon PHH's express promise of the permanent Modification in the Trial Plan Period, remitted the payments due and owing under the Trial Plan. Subsequent to Villegas's acceptance of and full performance of her obligations under the Trial Plan Period, PHH generated the Modification agreement. **See Exhibit 5**.

95. Villegas then executed and returned the Permanent Modification on or around November 30, 2020. However, PHH sent a letter stating that the Permanent Modification was incomplete due to "defects" in the agreement and advised that the new agreement or missing document must be submitted before or on December 25, 2020. **See Exhibits 5-6.**

96. Both Villegas' counsel and PHH agreed that Villegas should sign an Affidavit of Identity which was created, executed, and delivered to PHH via Fax on or around January 22, 2021. Yet, PHH failed to acknowledge receipt of the Identity Affidavit and then rejected and refused to honor the Permanent Modification due to circumstances created solely by PHH. **See Exhibits 7-8.**

97. PHH's failure to honor its promise to implement the Modification despite Villegas executing the Permanent Modification, and sending the Affidavit of Identity to correct the defect constitutes deception, false promises, misrepresentations, and/or unconscionable acts under the CFA.

98. PHH's unlawful practices have caused Villegas ascertainable losses, as further alleged, *supra*, in ¶¶ 46-48.

99.     PHH's subsequent failures to send the new Modification to Villegas to mitigate the harm to Villegas, despite its promises to do so through the NOE Response, constitute deception, false promises, misrepresentations, and/or unconscionable acts under the CFA.

100.    As a result of PHH's actions, PHH is liable to Villegas for actual damages as further alleged, *supra,* and attorneys' fees and costs. Villegas is entitled to treble the damages caused by PHH's violation of the CFA. N.J.S.A. § 56:8-19.

## **PRAYER FOR RELIEF**

**WHEREFORE** Viviana Villegas respectfully requests that this Court enter an order granting Judgment in her favor and against Defendant PHH Mortgage Corporation for the following:

A. For an award of actual damages as to allegations contained in Counts One through Four;

B. For statutory damages of Two Thousand Dollars ($2,000.00) against Defendant for each and every violation of 12 C.F.R. § 1024.36 and 12 U.S.C. § 2605(k) as alleged in Count One;

C. For attorneys' fees and costs as to Counts One pursuant to 12 U.S.C. § 2605(f)(3);

D. For treble actual damages, attorneys' fees, and costs as to the allegations contained in Count Four;

E. Such other relief this Court may deem just and proper.

Respectfully submitted,

*/s/ Javier L. Merino*
Javier L. Merino, Esq.
The Dann Law Firm, PC
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Counsel for Plaintiff Viviana Villegas*

## JURY DEMAND

Villegas hereby demands a trial by jury.

Dated: August 11, 2021

Respectfully submitted,

*/s/ Javier L. Merino*
Javier L. Merino, Esq.
The Dann Law Firm, PC
*Counsel for Plaintiff Viviana Villegas*